## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **ESTATE OF CURTIS JAMAL DEAL** | * | |
| | * | |
| | * | |
| | * | |
| **v.** | * | **Civil Action No. CCB-20-799** |
| | * | |
| | * | |
| **DAVID R. KINCAID, JR.** | * | |
| | ****** | |

## MEMORANDUM

This is a civil rights action brought by the Estate of Curtis Jamal Deal ("the Estate") against David R. Kincaid, Jr. ("Kincaid"). Before the court is Kincaid's motion to dismiss the Estate's complaint for failure to state a claim. (ECF 12). The motion has been fully briefed and no oral argument is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the following reasons, the motion will be granted, but with leave to amend as to the claim under 42 U.S.C. § 1983.

## BACKGROUND

Curtis Jamal Deal was shot and killed by defendant Kincaid, then a Baltimore Police Officer, on February 7, 2017. Kincaid had been in pursuit of Deal on Frederick Avenue near South Monroe Street in Baltimore. Both were armed, and both had their firearms drawn when they crossed paths near an alley. Kincaid ordered Deal to stop. Deal did not submit to this order but continued to run into the street and lifted his firearm in Kincaid's direction. Kincaid responded by firing his gun several times, striking Deal three times in his lower hip and torso area. (ECF 2, Compl. ¶ 5). Deal did not immediately succumb to his wounds, but allegedly writhed in pain, pleaded with Kincaid for medical attention, and proclaimed that he did not want to die. (*Id.* ¶ 6). Kincaid handcuffed Deal and did not immediately render medical assistance or call for emergency medical personnel. (*Id.* ¶¶ 7, 17). Kincaid waited some number of minutes, a period the complaint

1

describes as a "protracted period of time," before calling Emergency Medical Services ("EMS"). (*Id.* ¶¶ 7, 11). By the time EMS were called to the scene, Deal had "no vital signs or signs of life." (*Id.* ¶ 8). The Estate alleges that Deal's injuries were not necessarily fatal with appropriate and timely medical attention. (*Id.* ¶ 7).

On February 7, 2020, the Estate brought this action against Kincaid in Baltimore City Circuit Court, alleging that Kincaid's delay in seeking medical attention for Deal violated his civil rights under 42 U.S.C. § 1983 and Article 24 of the Maryland Declaration of Rights and constituted intentional infliction of emotional distress. Kincaid removed the action to this court and moved to dismiss the claim for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

**STANDARD OF REVIEW**

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Additionally, although courts "must view the facts alleged in the light most favorable to the plaintiff," they "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments'" in deciding whether a case should survive a motion to dismiss. *U.S. ex rel. Nathan v. Takeda*

*Pharm. North Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart,* 680 F.3d 359, 365 (4th Cir. 2012)).

## DISCUSSION

### I.      State Law Claims

Kincaid argues the Estate's state law claims must be dismissed because the complaint fails to allege compliance with the Maryland Local Government Tort Claim Act's notice provision, Md. Code Ann., Cts. & Jud. Proc. § 5-304(b)(1). *See Hansen v. City of Laurel*, 420 Md. 670, 694 (2011). The Estate abandoned its intentional infliction of emotional distress and Article 24 claims in its opposition to the motion. (ECF 13-1, Opp'n at 4). Accordingly, the Estate's state law claims will be dismissed with prejudice.

### II.      Section 1983 Claim

The Estate's theory of recovery under § 1983 is that Kincaid violated Deal's Fourteenth Amendment right to due process by displaying "deliberate indifference" to Deal's medical condition following his shooting of Deal.[1] Kincaid concedes that at the time of the relevant events, Deal was detained, meaning Kincaid owed him some constitutional duty—"the due process clause mandates the provision of medical care to detainees who require it." *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992). "[T]he precise scope of this obligation is unclear" but it is at least as great as the obligation owed to convicted prisoners, who may make out a due process violation upon showing a "deliberate indifference to serious medical needs." *Martin v. Gentile*, 849 F.2d 863, 871

---

[1] The complaint also appears to allege that Kincaid's actions violated the Fourteenth Amendment's Equal Protection Clause, (ECF 2, Comp. ¶ 15), but the complaint includes no facts that suggest differential or unequal treatment from others who are similarly situated, *see Veney v. Wyche*, 293 F.3d 726, 730–31 (4th Cir. 2002), and the Estate does not pursue any equal protection claim in its opposition to the motion to dismiss. The court will therefore consider any equal protection claim abandoned.

(4th Cir. 1988) (citing *Estelle v. Gamble*, 429 U.S. 97, 104–06 (1976)). "The deliberate-indifference standard has two components. The plaintiff must show that he had serious medical needs, which is an objective inquiry, and that the defendant acted with deliberate indifference to those needs, which is a subjective inquiry." *Heyer v. United States Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017).

A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* at 210 (quoting *Iko v. Shreve*, 53 F.3d 225, 241 (4th Cir. 2008)). The Estate's allegations that Deal suffered multiple gunshot wounds plainly satisfy this standard, and Kincaid does not argue otherwise.

As for the subjective component, an official displays deliberate indifference when they subjectively know of and disregard an excessive risk to the detainee's health or safety—that is, the official must have "actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (citing *Farmer v. Brennan*, 511 U.S. 825, 837–39 (1994)). This is a "very high standard—a showing of mere negligence will not meet it[,]" and it does not protect against errors in judgment alone, *Grayson v. Peed*, 195 F.3d 692, 695–96 (4th Cir. 1999); rather, the official must have engaged in subjective recklessness, an "intentional taking of a risk that the defendant knows might cause harm while lacking any intent to cause such harm[,]" *Anderson v. Kingsley*, 877 F.3d 539, 545 (4th Cir. 2017) (emphasis removed). Delaying access to the treatment of a known serious medical need can constitute deliberate indifference where the delay exacerbates injuries or inflicts further pain or suffering. *See Martin*, 849 F.2d at 871; *Abraham v. McDonald*,

493 Fed. App'x 465, 466 (4th Cir. 2012).[2] "However, even officials who acted with deliberate indifference may be 'free from liability if they responded reasonably to the risk.'" *Scinto v. Stansberry*, 841 F.3d 219, 226 (4th Cir. 2016) (quoting *Farmer*, 511 U.S. at 844).

Kincaid does not argue that he was unaware of either Deal's serious medical needs or that an inadequate response to those needs posed an excessive risk to Deal's health and safety; rather, he argues that the complaint is deficient in three respects. First, Kincaid argues that a delay of "minutes" in calling EMS is too brief to rise to the level of deliberate indifference as a matter of law. Second, he avers the Estate has failed to allege facts that plausibly establish that a more immediate response would have improved Deal's prognosis. Third, Kincaid argues that the complaint lacks any factual allegations regarding Kincaid's response during the period before medical personnel were called, and that without such facts, the Estate cannot demonstrate that Kincaid was subjectively aware of the insufficiency of his response. The court addresses each argument in turn.

The Estate does not plead the exact number of minutes Deal was left without medical attention following three serious gunshot wounds before Kincaid called EMS. But the allegations show that, at the very least, enough time passed for Kincaid to handcuff Deal and for Deal to "plead for medical attention," declare that "he did not want to die," writhe in pain from his injuries, and then succumb to them, as Deal had "no vital signs" when Kincaid called EMS to the scene. (ECF 2, Compl. ¶¶ 6–8). At the motion to dismiss stage, these allegations are sufficient for the court to draw a reasonable inference that Kincaid's delay was not insignificant, and "even a brief delay may be unconstitutional" where the medical need is life-threatening, as Kincaid knew Deal's

---

[2] Unpublished opinions are cited for the soundness of their reasoning and not for their precedential value.

injuries to be. *Estate of Booker v. Gomez*, 745 F.3d 405, 431–33 (10th Cir. 2014) (internal quotation marks omitted) (affirming denial of summary judgment to officers who failed to seek medical assistance for three minutes for pretrial detainee after they placed him in a chokehold until he was unconscious and then tased him for eight seconds); *see also Easterling v. Perez*, No. CV 16-4463 (JMV), 2017 WL 3610484, at *6 (D.N.J. Aug. 22, 2017) (inferring from the severity of the plaintiff's gunshot wounds that "even a short delay in treatment potentially posed a serious risk of injury"). Particularly in cases where an officer has inflicted potentially deadly injuries, courts have held that delays in medical attention as short as six, five, or even three minutes may constitute deliberate indifference to a serious medical need. *See Estate of Owensby v. City of Cincinnati*, 414 F.3d 596, 600–01, 602–04 (6th Cir. 2005) (affirming denial of qualified immunity to officials who left a man in a police cruiser for six minutes after beating him, pinning his arms under his chest, and placing him in a "head wrap" and who were aware that the man was unconscious, bleeding, and unable to breathe); *Perez v. Cox*, 788 Fed. App'x 438, 445 (9th Cir. 2019) (affirming denial of motion to dismiss deliberate indifference claim against officer who responded to scene after an inmate was shot with birdshot multiple times, witnessed the inmate "in an enormous pool of blood," and failed to make any effort to intervene during the five minutes it took for medical personnel to arrive); *Estate of Booker*, 745 F.3d at 431–33; *Valderrama v. Rousseau*, 780 F.3d 1108, 1117–20 (11th Cir. 2015) (affirming denial of summary judgment to two officers who "inexplicably" waited three and a half minutes to call for medical assistance after one of them shot a man during a traffic stop).

The Estate has also pled facts sufficient to infer that Kincaid's delay "exacerbated" or "unnecessarily prolonged" Deal's pain or injuries. *Abraham*, 493 Fed. App'x at 466. The Estate alleges that Deal was shot in the lower hip area and that he was able to plead with Kincaid for

medical attention for some period of time before he lost consciousness. (ECF 2, Compl. ¶¶ 5–6).

Viewed in the light most favorable to the Estate, that Deal was coherent for part of the incident

plausibly suggests that his gunshot wounds were not inevitably fatal and that his life could have

been saved, or at least his suffering eased, by the more timely arrival of EMS. Deal's

responsiveness while Kincaid delayed medical assistance distinguishes this case from *Arrington*

*v. Hensley*, No. 5:15-CV-93-BO, 2017 WL 491644, at *2 (E.D.N.C. Feb. 6, 2017), cited by

Kincaid. In *Arrington*, the court held that the plaintiff could not state even a negligence claim for

officers' failure to render care or allow a third party to do so while they waited for medical

personnel where a suspect was unresponsive prior to their arrival and where there was no other

evidence suggesting that with assistance he would have survived. *Id.*

Kincaid's third argument, however, has merit. The complaint alleges that Kincaid did not

assist Deal and waited some "minutes" after the shooting to contact EMS, but it does not include

any allegations regarding Kincaid's actions during those minutes. In those cases involving short

delays in seeking medical attention which were found to state a claim for deliberate indifference,

the plaintiffs had alleged facts regarding the officials' response to the injuries sufficient to infer

that their actions were more than negligent and that the officers were aware of the insufficiency

of their responses. For example, in *Easterling v. Perez*, the plaintiff did not state the length of the

delay, but alleged that officers drove him around with no apparent purpose while he bled from a

gunshot wound instead of transporting him to a hospital immediately, plausibly supporting a

theory that they were at least reckless as to his needs, if not acting with the intent to harm him.

2017 WL 3610484, at *6.

This is not to say that the Estate may only state a claim for deliberate indifference by

presenting facts that show Kincaid did essentially nothing or intended to harm Deal by delaying

his call to EMS. But there must be some factual assertion regarding his response that shows he was aware of its inadequacy, *see Anderson*, 877 F.3d at 545. The length of the delay in itself or the reasons given for it might allow such an inference, but the Estate has pled neither here. To the extent that the Estate attempts to supplement the complaint by asserting in its opposition that the "several life-saving minutes" in the complaint "can mean up to an hour[,] just over an hour[,] or less" and that Kincaid spent that period "walking the perimeter, questioning witnesses, berating spectators, and waiting for the top command unit to arrive," among other things (ECF 13, Opp'n at 6), the court cannot consider these allegations. "A motion to dismiss tests the sufficiency of a complaint" and the court's "evaluation is thus . . . limited to a review of the allegations of the complaint itself." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (internal quotation marks and citation omitted). The present complaint proffers only that Kincaid handcuffed Deal, then called EMS an undefined number of minutes later, leaving the court with only a vague understanding of Kincaid's actions and, thus, his subjective recognition of the reasonableness or unreasonableness of those actions. To allow such amorphous allegations to proceed would be to conclude that any possible response other than immediately calling EMS following the use of potentially lethal force can state a deliberate indifference claim. Such a brightline rule would ignore a core part of the subjective component of deliberate indifference—the officer's "subjective recognition of the inappropriateness of the measures taken in response to a known substantial risk of harm." *Anderson*, 877 F.3d at 545.[3]

In sum, the Estate's allegations regarding Kincaid's recognition that his response to Deal's injuries posed an excessive risk to Deal's health and safety are simply too thin to "raise a

---

[3] Because the court concludes that the Estate has failed to plead facts sufficient to state a claim, it is not necessary to address Kincaid's arguments that he is entitled to qualified immunity for any constitutional violation.

right to relief above the speculative level" and state a plausible claim for deliberate indifference to a serious medical need. *Twombly*, 550 U.S. at 555. But, because the Estate may be able to cure these factual deficiencies through an amendment to the complaint that at least approximates the length of the delay and that contains allegations regarding Kincaid's actions (or inaction) during that period, the dismissal of the claim will be without prejudice. *Cf. Cozzarelli v. Inspire Pharms., Inc.*, 549 F.3d 618, 630 (4th Cir. 2008) (dismissal with prejudice appropriate where it was "clear that amendment would be futile in light of the fundamental deficiencies in plaintiffs' theory of liability").

**CONCLUSION**

For the foregoing reasons, the court will grant Kincaid's motion to dismiss. The Estate's state law claims will be dismissed with prejudice; its § 1983 claim will be dismissed without prejudice and with leave to amend. A separate Order follows.


_____3/4/2021_____                                          _____/S/_____
Date                                                                    Catherine C. Blake
                                                                            U.S. District Court Judge